# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## SARAH SHEPHERD *et al vs.* JOSEPH HAMMOND.

### January Term, 1869.

H. agreed, in 1859, to buy up and compromise claims against the estate of an intestate in consideration that he should have a certain part of the real estate of the decedent, supposed to contain 39 acres, which he took into possession, at a certain price per acre. On a refusal of the administratrix, with whom he had made the agreement, to make a deed for the certain real estate, he filed a bill, in 1867, to have so much set off to him at the agreed price per acre, as would reimburse him for the sum paid out in liquidation of debts against the estate of the decedent, alleging also trouble and expense in time and money in gathering the debts. The court below decreed a sale of real estate of decedent to satisfy a vendor's lien, and to pay H. the amount of the sum disbursed by him with interest *from the time of payment; and that as compensation for his time, trouble and* expense in gathering up and paying off the claims, he would not be charged with rents and profits on the land, which he had taken into possession, from 1859 to April 1st, 1868. HELD:

> That inasmuch as H. had paid off the debts, and thus relieved the administratrix from the trouble of so doing, that it was equitable he should have whatever commission could have been allowed her in such case; and as the law would allow her as much as ten per cent. in case of extra trouble, that H. ought to receive that amount on the amount paid out by him, in addition to legal interest from the time he gave up the land.

The matters stated in the original bill in this case do not appear to have been considered by this court, and it is unnecessary to state them. The amended bill, which was filed in July, 1867, alleged that in 1858 or 1859, the complainant, Joseph Hammond, agreed with the widow and administratrix, Sarah Shepherd, to settle and compromise debts against the estate of the decedent, and to take for sums thus paid a certain piece of land, being a part of that of which the intestate died seized, belonging to the estate, supposed to

contain 39 acres, but which only contained, on survey, 29 acres, at the price of 33 dollars per acre. That he paid off several debts and took possession of the land, and the widow refused to make a deed for it, and denied the agreement. It prayed that the orator might have sufficient land set apart to him at the value of 33 dollars per acre, to reimburse him for the money paid out by him. ·

Several depositions were taken in the cause, the substance of which are given in the opinion of the court.

The court below decreed that "the land on the south-east side of the Waynesburg road," supposed to be about 50 acres of the whole tract of which the intestate died seized, be sold, and after paying a certain vendor's lien thereon, that Hammond be paid the amount disbursed by him, which the commissioner reported at 1,348 dollars and 64 cents, with interest from the date of payment, and that to compensate him for his time, trouble and expense in gathering up and paying off the claims, he should not be charged with the rents and profits of the land (which was proven to be worth about 75 dollars per year) occupied by him from 1859 to April 1st, 1868. The decree was rendered November 13th, 1867, by the circuit court of Marshall county.

From this decree the defendants, Sarah Shepherd and the heirs of Jeremiah Shepherd, appealed to this court.

*Holliday* for the appellants.
*Stanton & Allison* for the appellee.

BERKSHIRE, J. In the original bill the appellee, Hammond, claims the whole amount of the debts against the estate of Jeremiah Shepherd, which he had purchased at a large discount, without saying anything about the agreement between him and said Shepherd's widow and administratrix, about the purchase of the land; and asks that the real estate of which said Shephead died seized, be sold, and that the complainant be paid the full amount of these debts and interest. In his amended bill, however, he admits that he had agreed with Mrs. Shepherd to purchase and take up

these debts at whatever discount he could procure, and was to have a piece of land off of the Shepherd farm for the money he paid for said claims, at 33 dollars per acre. That a certain piece, supposed to contain 39 acres, was agreed on and taken possession of by the complainant in pursuance of the verbal agreement, the price agreed on being its full value; and prays that a sufficient quantity of land, at 33 dollars per acre, be decreed to him to reimburse for the amount paid out by him on the said claims.

From the evidence in the cause it is quite evident that the object had in view by Mrs. Shepherd, in making this arrangement with Hammond, was to try and save to herself and children a portion of the small estate left by her husband, and it is equally apparent, I think, that Hammond's desire and object was to purchase a part of the Shepherd land, which was convenient to and adjoined his own land. The depositions of a large number of the creditors of Jeremiah Shepherd, deceased, whose claims were paid and taken up by said Hammond, were taken in the cause; from which it appears that discounts were made on the debts so paid and taken up, and that the discounts were to be for the benefit of the widow and children of said Shepherd. That Hammond himself acknowledged and represented, at the time of purchasing and taking up some of the claims, that he was to have no part of the discounts, but that they were for the benefit of the widow and children. It also appears that the widow exerted herself to effect this arrangement, and went to the State of Ohio and effected a compromise with one of the largest creditors, who came over to Moundsville, near where said Hammond resides, when and where the latter paid off the claim (it being a judgment) at a discount of some 30 per cent. It moreover appears, from the evidence of some of the creditors who made the most liberal discounts on their claim, that they were induced to do so on account of the widow and children, and but for the understanding and belief that they were to receive the benefit of the discount, they would not have made them.

It is claimed by the appellee, Hammond, in his amended bill, that he was at much expense and trouble in buying in these claims. There is nothing in the record showing that he was compelled to or did in fact make any pecuniary expenditures in purchasing and taking up the debts over and above what he actually paid for them; nor does it appear that he was put to any great or extra trouble in reference to them. In all there were only twenty of the debts paid off by him. Of these six were in the hands of Mr. Holliday, an attorney, at Moundsville, in the immediate neighborhood of said Hammond, and the other creditors most likely resided in the same neighborhood or county.

From all the facts and circumstances of this case, therefore, I think the appellee, Hammond, stands on the same footing as if he had purchased the land of the administratrix, Mrs. Shepherd, and paid over to her directly the amount of money paid out by him on these claims, that being the amount of purchase money for the land as agreed on between them, and thereby devolved on her the duty and trouble of paying off the claims, with, however, the exception only of the time and trouble necessary and incident to the ascertaining and paying of the debts so purchased and taken up by him. *Bryan* vs. *Salyards*, 3 Grat., 188. What then would be the measure of damage sustained by him?

It is well settled that in an ordinary case of a purchase of land which the vendee is unable to hold and which is taken away from him by reason of a failure of title in his vendor, the measure of damages to the vendee is the amount of purchase money paid by him, with interest from the time of eviction. In the case supposed, therefore, if Hammond had paid the amount paid out by him on said debts directly to Mrs. Shepherd, he would have been entitled only to the amount so paid, with interest on the same from the time he gave up possession of the piece of land agreed to be sold to him.

But inasmuch as he paid off the debts himself, and thus relieved the administratrix from the trouble of doing so, if the money had in fact been paid over to her, I think it

equitable that he should have whatever commission could have been allowed to her in such case; and as the law would allow her as much as ten per cent. in case of extra trouble, it would not be unreasonable, as it seems to me, under the circumstances of this case, to allow the appellee, Hammond, that sum on the amount paid out by him in addition to legal interest from the time he gave up the land.

I think the decree should be reversed, with costs to the appellants here, and the cause remanded to the circuit court for further proceedings.

The remaining members of the court concurred.

DECREE REVERSED.